**REVISED June 17, 2014**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 12-40141

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 17, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

CARMEN DE JESUS BOCHE-PEREZ,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before DENNIS, CLEMENT, and SOUTHWICK, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Carmen De Jesus Boche-Perez ("Boche-Perez") appeals from a criminal conviction pursuant to a conditional plea agreement in which he pleaded guilty to knowing possession of child pornography, but reserved the right to appeal the denial of a motion to suppress a series of confessions given to border patrol agents. For the following reasons, we AFFIRM the district court's ruling on the motion to suppress.

**FACTS AND PROCEEDINGS**

Boche-Perez, a lawful permanent resident, was apprehended while entering the United States at the Laredo, Texas, port of entry on Wednesday, October 27, 2010. Customs and Border Patrol ("CBP") agents initially detained Boche-Perez for inspection at 9 a.m. after an ID check revealed that he was flagged as a suspected narcotics smuggler. Because Boche-Perez had a criminal history, border agents followed procedure and took Boche-Perez to the hard secondary inspection room, where he sat handcuffed to a chair for officer safety. After questioning and holding Boche-Perez in custody, CBP agents determined that Boche-Perez was eligible to enter the country. A final search of Boche-Perez's luggage at approximately 12:40 p.m., though, turned up DVDs containing child pornography. Boche-Perez does not contend that his detainment or the searches leading up to this point were unconstitutional.

Once the CBP agents discovered the DVDs with child pornography, they stopped questioning Boche-Perez and contacted Immigration and Customs Enforcement ("ICE"). An ICE agent arrived at the port at about 1 p.m. At approximately 1:50 p.m., the ICE agent read Boche-Perez his *Miranda* warnings and began interviewing him regarding the DVDs. Boche-Perez waived his *Miranda* rights and denied knowing that the DVDs contained child pornography. The interview ended shortly before 3 p.m., at which point the ICE agent contacted an Assistant United States Attorney, who agreed to prosecute Boche-Perez at 3:22 p.m.

The ICE agent then informed Boche-Perez that he was being arrested for possession of child pornography and that he would be transported to the Webb County jail. At that time, however, Boche-Perez still had to be processed for admittance and paroled into the United States. Accordingly, at approximately 4 p.m., a CBP agent interviewed Boche-Perez to process him into the United States. The CBP agent gave Boche-Perez his *Miranda* warnings again, and

after he waived his rights, he confessed at approximately 4:15 p.m.  In his confession, Boche-Perez specifically admitted that he knew the DVDs contained child pornography even before they were discovered in his luggage at the border. After the 4:15 p.m. oral confession, the CBP officer began the preparation of a written confession.  The CBP officer took from approximately 4:20 p.m. to 5:10 p.m. to prepare the statement.  Boche-Perez then reviewed the statement, and signed the written confession at 6 p.m.

At 9 p.m. CBP informed ICE that Boche-Perez had confessed and was ready to be transported to the Webb County Sheriff's office. Before transporting Boche-Perez to jail, however, the ICE agent who had arrested Boche-Perez questioned him again. ICE's second round of questioning elicited statements from Boche-Perez regarding his possession of additional child pornography at his home in Arkansas.  The ICE agent gave this information to law enforcement officers in Arkansas and asked them to obtain a search warrant for Boche-Perez's residence.  That search subsequently yielded evidence of further child pornography offenses.

Boche-Perez was booked into the Webb County jail at 11:40 p.m.  The ICE agent admitted at the suppression hearing that the federal building was less than 15 minutes from the bridge where Boche-Perez was arrested, and that the Government had agreed to prosecute Boche-Perez by 3:22 p.m. on October 27th. The ICE agent further admitted that at 3:22 p.m. he had the information needed to prosecute, and that the criminal complaint would be only two-to-three pages. Nonetheless, Boche-Perez spent two nights in jail, and was presented to the magistrate judge on the morning of Friday, October 29, 2010.  According to the ICE agent, the delay occurred because the United States Attorney's office requires the paperwork for an initial appearance to be submitted for approval by 4 p.m. on the day *before* presentment to the magistrate, and the ICE Agent

No. 12-40141

did not believe he had time to meet the 4 p.m. deadline after only getting the agreement to prosecute at 3:22 p.m.

In ruling on Boche-Perez's motion to suppress, the district court found that he was not presented to the magistrate judge within six hours, but that his statements were voluntary and not a consequence of the delay. Finding that the delay was not created for the purpose of extracting a confession, but rather resulted from delays arising out of administrative processing and the need for coordination across multiple law enforcement agencies, the district court denied Boche-Perez's motion to suppress his statements on the basis of a delay in presentment. The district court also determined that his confessions were voluntary, and that no *Miranda* violation had occurred.

After the motion to suppress was denied, Boche-Perez entered a conditional guilty plea to knowingly possessing child pornography. Boche-Perez reserved the right to appeal the denial of the motion to suppress. The district court sentenced him to 63 months in prison and to 5 years of supervised release. Boche-Perez timely appealed.

**STANDARD OF REVIEW**

In reviewing a motion to suppress, this court reviews the district court's legal determinations de novo and its factual findings for clear error. *United States v. Gonzalez*, 121 F.3d 928, 938 (5th Cir. 1997). We look at the evidence in the light most favorable to the prevailing party, *United States v. Lopez-Moreno*, 420 F.3d 420, 429 (5th Cir. 2005), which here is the Government. A district court's ruling on a motion to suppress may be affirmed on any basis supported by the record. *United States v. Ibarra-Sanchez*, 199 F.3d 753, 758 (5th Cir. 1999).

4

No. 12-40141

## DISCUSSION

Boche-Perez challenges (1) the district court's denial of his motion to suppress his three confessions on the basis of an unreasonable delay in presentment, (2) the district court's denial of his motion to suppress his three confessions on the grounds that they were involuntary, and (3) the district court's denial of his motion to suppress his final confession on the basis of a claimed *Miranda* violation. Boche-Perez's arguments do not succeed.

### 1) *Delay in Presentment*

Rule 5 of the Federal Rules of Criminal Procedure requires that "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge." Fed. R. Crim. P. 5(a)(l)(A). Rule 5 codifies the common-law rule of "prompt presentment," which required that an officer take an arrested person before a magistrate "as soon as he reasonably could." *Corley v. United States*, 556 U.S. 303, 306 (2009). In *McNabb v. United States*, 318 U.S. 322 (1943) and *Mallory v. United States*, 354 U.S. 449 (1957), the Supreme Court established a remedy for violations of the prompt-presentment requirement: suppression of any confession obtained during a period of unreasonable delay. *Corley*, 556 U.S. at 309.

In 1968, Congress modified the *McNabb–Mallory* framework by enacting 18 U.S.C. § 3501. Section 3501(c) provides that a court may not suppress a confession made during a six-hour safe-harbor period solely due to a delay in presentment if the confession was made voluntarily.[1] *See Corley*, 556 U.S. at

---

[1] 18 U.S.C. § 3501(c) provides that:

In any criminal prosecution by the United States or by the District of Columbia, a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a magistrate judge or other officer empowered to commit persons

5

322. Section 3501(c) also permits for an extension of the six-hour safe harbor in any case in which the delay in bringing such a person before a magistrate is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest magistrate. Confessions provided outside § 3501(c)'s safe-harbor, however, remain subject to the *McNabb-Mallory* exclusionary rule. *Id.*; *see also United States v. Cantu-Ramirez*, 669 F.3d 619, 625 (5th Cir. 2012).

Because this circuit has yet to address the viability of its pre-*Corley* case law in cases involving presentment delays that fall outside of the safe harbor, we must first address the implications of *Corley*.

(A) *Effect of* Corley *on Existing Case Law*

This circuit abides by the rule of orderliness, under which a panel of the court cannot overturn a prior panel decision "absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court or by our *en banc* court." *Technical Automation Servs. Corp v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 405 (5th Cir. 2012) (internal quotation marks omitted). "[F]or a Supreme Court decision to change our [c]ircuit's law, it must be more than merely illuminating with respect to the case before the court and must unequivocally overrule prior precedent." *Id.* at 405 (internal quotation marks and alterations omitted). Our inquiry is whether *Corley* unequivocally overruled our existing precedent concerning *McNabb-Mallory*. We hold that it did.

---

charged with offenses against the laws of the United States or of the District of Columbia if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention: *Provided*, [t]hat the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate judge or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate judge or other officer.

No. 12-40141

Before *Corley* we treated a delayed presentment as just one factor to be considered as part of a totality-of-the-circumstances evaluation into whether a confession was given voluntarily. *See, e.g.*, *United States v. Perez-Bustamante*, 963 F.2d 48, 52-53 (5th Cir. 1992); *United States v. Bustamante-Saenz*, 894 F.2d 114, 120 (5th Cir. 1990). Delays longer than six hours "merely constitute[d] another factor to be considered by the trial judge in determining voluntariness." *United States v. Hathorn*, 451 F.2d 1337, 1341 (5th Cir. 1971). *Corley* unequivocally held that our prior approach was in error.

*Corley* makes clear that even voluntary confessions should be suppressed if they occurred during a period of unreasonable delay. "If the confession occurred before presentment and beyond six hours," the Supreme Court instructed, "the court must decide whether delaying that long was unreasonable or unnecessary under the *McNabb-Mallory* cases, and if it was, the confession is to be suppressed." 556 U.S. at 322. Accordingly, we take this opportunity to confirm that, to the extent our previous cases have indicated that a greater-than-six-hour delay is only a component of a broader voluntariness examination, those cases were overruled by the Supreme Court in *Corley*. Instead, when presented with a delay outside of the safe harbor, a district court must apply the *McNabb-Mallory* doctrine to determine whether the delay in bringing a suspect before a magistrate was reasonable.

No. 12-40141

B) *Standard for Determining Violations of* McNabb-Mallory[2]

*Mallory* provides the following guidance for determining whether a confession happened after a period of unnecessary delay:

> The police may not arrest upon mere suspicion but only on 'probable cause.' The next step in the proceeding is to arraign the arrested person before a judicial officer as quickly as possible so that he may be advised of his rights and so that the issue of probable cause may be promptly determined. The arrested person may, of course, be 'booked' by the police. But he is not to be taken to police headquarters in order to carry out a process of inquiry that lends itself, even if not so designed, to eliciting damaging statements to support the arrest and ultimately his guilt.
>
> The duty enjoined upon arresting officers to arraign 'without unnecessary delay' indicates that the command does not call for mechanical or automatic obedience. Circumstances may justify a brief delay between arrest and arraignment, as for instance, where the story volunteered by the accused is susceptible of quick verification through third parties. But the delay must not be of a nature to give opportunity for the extraction of a confession.

354 U.S. at 454-55. As noted by the Supreme Court, the doctrine proscribes only unnecessary delays, and not delay itself. Accordingly, when applying *McNabb-Mallory,* a court cannot simply "watch[] the clock," and treat the doctrine as "a carpenter's measuring stick to be used by merely laying it alongside the material to be evaluated." *Muschette v. United States*, 322 F.2d 989, 991 (D.C. Cir. 1963), *vacated on other grounds*, 378 U.S. 569 (1964). A six-hour delay in presentment should not be treated as a sort of talismanic formula that renders all confessions made after the delay inadmissable: "[a] lapse of hours between arrest and

---

[2] We highlight for the sake of clarity that the Government did not raise any argument that Boche-Perez's waiver of his *Miranda* rights also constituted a waiver of his *McNabb-Mallory* rights. Because any delays that occurred were reasonable and/or harmless, we do not reach the question of whether such a rule exists in this circuit, or the effect, if any, *Corley* had on such a rule. We do note, however, that some courts have come to the conclusion that a *Miranda* waiver also constitutes a waiver of rights under *McNabb-Mallory*. *See, e.g.*, *Corley*, 556 U.S. at 328-29 (Alito, J., dissenting) (citing cases); *United States v. Guthrie*, 265 F. App'x 478, 480-81 (9th Cir. 2008); *see also Brown v. United States*, 979 A.2d 630, 636-37 (D.C. 2009) (considering effect of *Corley* on *McNabb-Mallory* waivers).

No. 12-40141

arraignment, standing alone, does not require the exclusion of a statement made during the period." *United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995); *see also  Muschette*, 322 F.2d at 241. "The mere fact that a confession is made while [the accused] is in custody of the police does not render it inadmissable," *McNabb*, 318 U.S. at 346, because "it is the need for the delay rather than its length that is controlling." 1 Charles Alan Wright & Andrew D. Leipold, *Federal Practice and Procedure: Criminal* § 73, at 179 (4th ed. 2008).

Accordingly, a *McNabb-Mallory* challenge requires a district court to make two determinations:

Initially, the court must determine the length of the delay.  The *McNabb-Mallory* clock starts to run from when the obligation to take the defendant before the federal magistrate arises, *see United States v. Alvarez-Sanchez*, 511 U.S. 350, 359 (1996), to the point at which the confession was rendered, *see, e.g.*, *United States v. Mitchell*, 322 U.S. 65, 70 (1944); *United States v. Brown*, 459 F.2d 319, 324 (5th Cir. 1971).[3]   *McNabb-Mallory* concerns itself with "the time of confession, not the time of first appearance." 1 Wright & Leipold § 73, at 177. If that period is shorter than six-hours, or alternatively, any extension of the safe harbor "considering the means of transportation and the distance to be traveled to the nearest available such magistrate judge or other officer," 18 U.S.C. § 3501(c), then the *McNabb-Mallory* inquiry is at an end.

---

[3] *See also United States v. Elkins*, 774 F.2d 530, 534-35 (1st Cir. 1985); *United States v. Leviton*, 193 F.2d 848, 853 (2d Cir. 1951); *Gov't of V.I. v. Gereau*, 502 F.2d 914, 924 (3d Cir. 1974), *rev'd on other grounds*, *Corley*, 556 U.S. at 312-13; *United States v. Seohnlein*, 423 F.2d 1051, 1053 (4th Cir. 1970); *United States v. Long*, 323 F.2d 468, 471 (6th Cir. 1963); *United States v. Davis*, 532 F.2d 22, 25 (7th Cir. 1976); *Bright v. United States*, 274 F.2d 696, 697 (8th Cir. 1960); *United States v. Halbert*, 436 F.2d 1226, 1237 (9th Cir. 1970), *overruling on other grounds recognized by United States v. Mendoza*, 16 F. App'x 770, 772 (9th Cir. 2001); *Chapman v. United States*, 397 F.2d 24, 26 (10th Cir. 1968); *Mathies v. United States*, 374 F.2d 312, 315 (D.C. Cir. 1967); Wayne R. LeFave et al., *Criminal Procedure* § 6.3 (Westlaw 3d ed. 2012).

No. 12-40141

But if the length of the delay is determined to fall outside of the § 3501(c) safe harbor, then the court needs to move on to the second step of the analysis and examine whether the causes of the delay were justifiable under the *McNabb-Mallory* cases. The defendant has the burden of demonstrating a *McNabb-Mallory* violation. *See, e.g.*, *Brown*, 459 F.2d at 324; *Joseph v. United States*, 239 F.2d 524, 527 (5th Cir. 1957); *White v. United States*, 200 F.2d 509, 512 (5th Cir. 1952).[4]

*McNabb-Mallory* case law rejects delays when those delays have either (1) a non-existent or (2) an unacceptable justification. A non-existent explanation (*i.e.*, delay for delay's sake) is unacceptable under *McNabb-Mallory* because a delay for delay's sake is, by definition, unnecessary to any legitimate law enforcement purpose. *See, e.g.*, *United States v. Yong Bing-Gong*, 594 F. Supp. 248, 254 (S.D.N.Y. 1984), *aff'd sub nom., United States v. Bing-Nam*, 788 F.2d 4 (2d Cir. 1986). Similarly, a delay for the purpose of interrogation "is the epitome of [an] unnecessary delay." *Corley*, 556 U.S. at 308; *see also Rogers v. United States*, 330 F.2d 535, 538 (5th Cir. 1964). But beyond either unexplained delays or purposeful delays for criminal interrogations, courts have been "careful not to overextend *McNabb-Mallory*'s prophylactic rule in cases where there was a reasonable delay unrelated to any prolonged interrogation of the arrestee." *United States v. Garcia-Hernandez*, 569 F.3d 1100, 1106 (9th Cir. 2009).

As a result, the *McNabb-Mallory* doctrine tolerates delays related to legitimate law enforcement procedures, such as the administrative booking of

---

[4] *See also see also United States v. Van Poyck*, 77 F.3d 285, 288 (9th Cir. 1996); *Miller v. United States*, 396 F.2d 492, 496 (8th Cir. 1968); *Tillotson v. United States*, 231 F.2d 736, 738 (D.C. Cir. 1956); *United States v. Leviton*, 193 F.2d 848, 854 (2d Cir. 1951). We do not address whether there is a burden-shifting framework under *McNabb-Mallory* for delays in presentment greater than a certain number of hours because Boche-Perez does not raise, and therefore waived, any such argument. *Cf. Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56-57 (1991) (articulating burden-shifting framework when the defendant is not given a probable cause hearing within 48 hours).

the arrestee; coordinating with multiple law enforcement agencies or with the U.S. attorney's office; or verifying alibis. *See, e.g.*, *Mallory*, 354 U.S. at 454; *Davis,* 532 F.2d at 25-26; *United States v. Collins*, 462 F.2d 792, 795 (2d Cir. 1972);   *Feguer v. United States*, 302 F.2d 214, 251 (8th Cir. 1962); *Haines v. United States*, 188 F.2d 546, 554-55 (9th Cir. 1951); *cf. United States v. Corral-Martinez*, 592 F.2d 263, 268 (5th Cir. 1979). Delays so that the arrestee can receive medical care and/or sober up have also long been sanctioned.  *See, e.g.*, *United States v. Manuel*, 706 F.2d 908, 914 (9th Cir. 1983); *United States v. Aman*, 624 F.2d 911, 913 (9th Cir. 1980); *United States v. Isom*, 588 F.2d 858, 862 (2d Cir. 1978).

Delays arising from a  shortage of governmental personnel necessary for the initial appearance and transportation thereto (such as attorneys, law enforcement, and translators) also remain acceptable. *See, e.g., Garcia-Hernandez*, 569 F.3d at 1106.  For the purposes of determining whether there is a shortage of governmental personnel,  *McNabb-Mallory* does not require law enforcement officers to drop everything and rush to the magistrate when doing so would imperil public safety. *See, e.g.*, *Carter*, 484 F. App'x at 457-58;  *United States v. Hensley*, 374 F.2d 341, 349 (6th Cir. 1967).  Moreover, under *Mallory-McNabb*, the police are not entirely "forbidden . . . to investigate crime." *United States v. Vita*, 294 F.2d 524, 530 (2d Cir. 1961) (internal quotation marks omitted).  As such, law enforcement personnel are permitted, within reasonable limits, to investigate whether the crime occurred; search and secure a premises; and secure, confiscate, or destroy contraband before taking an arrestee to a magistrate. *See, e.g.*, *United States v. McDaniel*, 441 F.2d 1160, 1161 (4th Cir. 1971); *Williams v. United States*, 419 F.2d 740, 743 n.6 (D.C. Cir. 1969); *United States v. Chadwick*, 415 F.2d 167*,* 173 (10th Cir. 1969); *O'Neal v. United States*, 411 F.2d 131, 136 (5th Cir. 1969); *United States v. Lovejoy*, 364 F.2d 586, 589 (2d Cir. 1966); *United States v. Price*, 345 F.2d 256, 261-62 (2d Cir. 1965); *Rogers*,

330 F.2d at 538-39; *Williams*, 273 F.2d at 798; *Mallory v. United States*, 259 F.2d 796, 798 (D.C. Cir. 1958). And provided that the defendant agrees to cooperate before a period of unnecessary delay, *McNabb-Mallory* permits officers to translate oral confessions into written confessions, and does not require officers to prematurely terminate an interview. *See, e.g.*, *United States v. Redlightning*, 624 F.3d 1090, 1107-08 (9th Cir. 2010); *United States v. Candella*, 469 F.2d 173, 175-76 (2d Cir. 1976); *United States v. Johnson*, 467 F.2d 630, 636-37 (2d Cir. 1972); *Long v. United States*, 360 F.2d 829, 833 (D.C. Cir. 1966); *Vita*, 294 F.2d at 532; *Metoyer v. United States*, 250 F.2d 30, 33 (D.C. Cir. 1957); *Leviton*, 193 F.2d at 855.[5]

Courts also accept delays when the delays arise out of the unavailability of the magistrate. A magistrate can be considered unavailable due to a host of reasons including: a busy docket; a closed court; or other factors, such as distance and weather, that make transportation impractical, futile, and/or dangerous. *See, e.g.*, *United States v. Carter*, 484 F. App'x 449, 457-58 (11th Cir. 2012); *United States v. Lasley*, No. 8:11CR19, 2011 WL 1630936, at *4 (D. Ne. 2011). The prompt presentment requirement does not require a magistrate to be available twenty-four hours a day, and the government is not required to take the fastest possible route to the courthouse—just a reasonable one. *See, e.g.*, *Van Poyck*, 77 F.3d at 289; *United States v. Yunis*, 859 F.2d 953, 969 (D.C. Cir. 1988); *United States v. Mendoza*, 473 F.2d 697, 702 (5th Cir. 1973); *Williams v. United States*, 273 F.2d 781, 797 (9th Cir. 1959).

---

[5] *See also United States v. Michel*, No. S4-11-CR.-755, 2013 WL 686690, at *3-4 (S.D.N.Y. Feb. 26, 2013); *United States v. Annoreno*, No. 06 CR 33-1, 2009 WL 3518155, at *4 (N.D. Ill. 2009); *United States v. Pena Ontiveros*, 547 F. Supp. 2d 323, 339 (S.D.N.Y. 2008); *United States v. Haouari*, No. S1-00-CR.-15 (JFK), 2000 WL 1593345, at *7 (S.D.N.Y. Oct. 25, 2000); *United States v. Berkovich*, 932 F. Supp. 582, 588-89 (S.D.N.Y. 1996); *Yong Bing-Gong*, 594 F. Supp. at 257; *United States v. Delamarra*, 275 F. Supp. 1, 4-5 (D.D.C. 1967); *cf. United States v. McDowell*, 687 F.3d 904, 910-11 (7th Cir. 2012).

No. 12-40141

Finally, in applying *McNabb-Mallory*, a district court should not resort to a "semanticism that obscures the facts" of a case. *Leviton*, 193 F.2d at 854. The overall reasonableness of a delay will vary city-to-city, case-to-case, justification-to-justification.[6]   With those basic principles in mind, we turn to Boche-Perez's confessions.

C) *Application of the* McNabb-Mallory *Rule*

Because the *McNabb–Mallory* exclusionary rule concerns itself with the delay before the confession, we must examine each of the defendant's confessions to determine whether they occurred before an unnecessary delay in presentment. The record reveals three confessions from Boche-Perez regarding the DVDs.

Boche-Perez arrived at the border at approximately 9 a.m. CBP took him to hard secondary around 9:10 a.m. CBP agents discovered the illegal DVDs in Boche-Perez's luggage at 12:40 p.m., at which point they contacted ICE. ICE arrived at the port at 1:00 p.m., mirandized the defendant at approximately 1:50 p.m., and interviewed Boche-Perez from 1:50 p.m. to roughly 3 p.m. In that interview, Boche-Perez denied knowing that the DVDs contained illegal pornography. Nonetheless, at approximately 3 p.m., ICE contacted the U.S. Attorney's Office to see whether they would accept prosecution of the case. The U.S. Attorney's office accepted prosecution at 3:22 p.m. Boche-Perez's first confession soon followed.

(i) The 4:15 p.m. Oral Confession

The first confession occurred at approximately 4:15 p.m. After securing prosecution with the U.S. Attorney's office, ICE turned Boche-Perez over to a CBP agent to process him for immigration purposes. The CBP officer began the interview to process him for immigration purposes at 4:00 p.m., gave *Miranda*

---

[6] *See, e.g., Hensley*, 374 F.2d at 349; *Williams*, 273 F.2d at 797-98.

13

warnings at 4:13 p.m., and Boche-Perez quickly confessed at approximately 4:15 p.m.

Because the district court found that the six-hour safe harbor ran from 9:10 a.m., and the Government does not challenge that determination, we assume that the six-hour harbor safe harbor expired at 3:10 p.m.  Accordingly, when applying the *McNabb-Mallory* doctrine, we need to determine whether the roughly seven hour delay before Boche-Perez's first oral confession was reasonable in light of the totality of the circumstances.  We conclude that it was.

First, we agree with the district court's finding that there is "simply no" evidence that "the delay was for the purpose of attempting to extract a confession."  The delays that resulted before Boche-Perez's confession occurred not because of some effort to extend his detention for the purpose of interrogating him, but rather because of the need for, and the difficulties inherent in, coordination between "the remote law enforcement agencies and agents" working at one of the busiest ports of entry on the Mexican border.

The initial portion of the delay, from 9:10-12:40, and then from 12:40-3:00, was attributable to (1) routine administrative processing and search procedures at the border, (2) travel time for the officers responsible for investigating the crime, and (3) to determine whether any crime had occurred.  All three types of delay have long been considered reasonable under *McNabb-Mallory* case law, and they were especially so in this case given that the DVDs in question were not even discovered until 12:40 p.m.  *See, e.g.*, *Garcia-Hernandez*, 569 F.3d at 1106; *Corral-Martinez*, 592 F.2d at 268; *Collins*, 462 F.2d at 795; *McDaniel*, 441 F.2d at 1160-61;  *Mallory*, 259 F.2d at 798.

The next portion of the delay, from 3:00-3:22 p.m., occurred because of ICE's need to consult with the AUSA as to whether criminal charges could be filed.  Again, such delays have long been sanctioned by courts applying *McNabb-Mallory*.  *See, e.g.*, *Davis,* 532 F.2d at 25-26.

14

No. 12-40141

The final portion of the delay, from 3:22-4:15 p.m., had two causes, both of which were sufficient to justify delaying Boche-Perez's presentment. First, at the time he had confessed, ICE had not completed, and the AUSA had not reviewed, a criminal complaint for Boche-Perez. The ICE agent justified the delay during the suppression hearing by explaining that, after receiving the AUSA's agreement to prosecute the case at 3:22 p.m., he did not believe that he could complete the complaint in time for the local U.S. Attorney's 4:00 p.m. deadline for criminal complaints. As such, the criminal complaint was not submitted to the U.S. Attorney's office until the next day, and Boche-Perez was not presented to the magistrate until two full days had passed from when Boche-Perez was first placed in hard secondary.

Though ICE's inability to submit a criminal complaint to the U.S. Attorney by 4 p.m. had the unfortunate effect of delaying Boche-Perez's presentment by almost 24 hours from when it otherwise would have occured, the length of the ultimate delay does not affect the *McNabb-Mallory* analysis of Boche-Perez's 4:15 p.m. oral confession. *McNabb-Mallory* examines the reasonableness of the delay at the time of confession, not the time of presentment. Accordingly, rather than focusing on the effects that the failure to have completed a complaint by 4 p.m. had on Boche-Perez's time of presentment, we consider whether it was reasonable to have delayed his presentment past 4:15 p.m. because a complaint had not been completed by that time.

*That* delay was reasonable: a review of the complaint suggests that it was fair for the ICE agent to spend at least thirty minutes preparing the complaint—the *McNabb-Mallory* doctrine does not require government agents and lawyers to act with such haste that they omit proofreading their court filings—and also fair for the relevant U.S. attorney, even though not instantly available, to insist on reviewing and approving the complaint before it was filed

15

No. 12-40141

in court.[7] *Cf. Davis,* 532 F.2d at 25-26; *Collins*, 462 F.2d at 795; *Haines*, 188 F.2d at 554-55. It was reasonable for the entire process of preparing and approving the complaint to take at least an hour. As such, Boche-Perez's presentment had not been unreasonably delayed by the time he confessed because the relevant governmental personnel had not had sufficient time to prepare the paperwork necessary for the initial appearance.

Second, and in the alternative, even after the U.S. Attorney's office had approved prosecution at 3:22 p.m., Boche-Perez still had to be administratively processed for immigration purposes and paroled into the United States. Boche-Perez takes exception to the fact that some of the questions from the CBP agents concerned the DVDs and not just his immigration status, but his arguments ignore that his possession of the DVDs also had significant implications for his immigration status.

Under 8 U.S.C. § 1101(a)(13)(C), an "alien lawfully admitted for permanent residence in the United States"— such as Boche-Perez—"shall not be regarded as seeking an admission into the United States for purposes of the immigration law unless the alien . . . has engaged in illegal activity after having departed the United States " or has "committed an offense identified in [8 U.S.C. § 1182(a)(2)]." 8 U.S.C. § 1182(a)(2) identifies two different types of criminal offenses as being grounds for inadmissability: "crime[s] involving moral

---

[7] Because we consider only the reasonableness of the delay until Boche-Perez confessed based on the totality of circumstances presented here, we do not pass judgment on the overall legitimacy under the Federal Rules of Criminal Procedure of the office policy that requires criminal complaints to be submitted by 4:00 p.m. on the day before presentment for review and transmittal to the court. We are mindful of the fact that generally standardized administrative processes are in place to expedite, rather than delay, the presentment of arrestees. The U.S. Attorney is CAUTIONED, however, that Rule 5(a)'s command that a prisoner be presented to a magistrate without unnecessary delay does not mean when optimally convenient. "The road to presentment before a magistrate for one accused of a crime should not be paved only with good intentions," and accordingly, "district courts will be required to rule on the reasonableness in individual cases of any pre-arraignment delays exceeding six hours." *United States v. Perez*, 733 F.2d 1026, 1036 (2d Cir. 1984).

16

turpitude," and crimes "relating to a controlled substance." Boche-Perez's possession of the DVDs strongly suggested that he had both committed a crime of moral turpitude and engaged in an illegal activity after having departed the United States. CBP officials were accordingly entitled to question him about the DVDs in light of their potential implications for Boche-Perez's immigration status. *See, e.g.*, *Gonzaga-Ortega v. Holder*, 694 F.3d 1069, 1073-76 (9th Cir. 2012). It was reasonable for presentment to be delayed for administrative processing by an hour or so to parole Boche-Perez into the United States. *See, e.g.*, *United States v. Garcia-Hernandez*, 569 F.3d 1100, 1102, 1106 (9th Cir. 2009) (delay to administratively process at the border and determine whether to file criminal charges was reasonable); *United States v. Collins*, 462 F.2d 792, 795-96 (2d Cir. 1972) (delay for administrative processing was reasonable); *United States v. Fontane-Medina*, No. 11-20492-CR, 2011 WL 6826811, at *19-*21 (S.D. Fla. Nov. 27, 2011) (delay to determine immigration status was reasonable).

Boche-Perez raises two objections to the reasonableness of the immigration processing. First, he objects to the idea that he was asked questions at all after the U.S. Attorney's office decided to prosecute. However, as long as the delay was not for the purpose of interrogation and was reasonable, as the district court expressly found here, the *McNabb-Mallory* doctrine does not institute a flat ban on asking any questions. *See, e.g.*, *Carter*, 484 F. App'x at 457-58; *Redlightning*, 624 F.3d at 1107-08; *Yunis*, 859 F.2d at 955-57, 967-69; *United States v. Purvis*, 768 F.2d 1237, 1239 (11th Cir. 1985); *Collins*, 462 F.2d at 795-96; *Johnson*, 467 F.2d at 634; *O'Neal*, 411 F.2d at 136; *Price*, 345 F.2d at 262; *Rogers*, 330 F.2d at 539; *Mallory*, 259 F.2d at 798; *Yong Bing-Gong*, 594 F. Supp. at 257, *aff'd, Bing-Nam*, 788 F.2d at 4; *Michel*, 2013 WL 686690, at *3-4; *Annoreno*, 2009 WL 3518155, at *4; *Pena Ontiveros*, 547 F. Supp. 2d at 339; *Haouari*, 2000 WL 1593345, at *7; *Berkovich*, 932 F. Supp. at 587-89; *cf. McDaniel*, 441 F.2d at

1161. And because Boche-Perez was provided *Miranda* warnings, and confessed so quickly after immigration processing began, this is not a case where we need to explore the outer-boundaries of pre-arraignment questioning under *McNabb-Mallory* during periods of otherwise reasonable delay.

Second, Boche-Perez objects that our determination runs contrary to the Ninth Circuit's ruling in *United States v. Valenzuela-Espinoza. See* 697 F.3d 742 (9th Cir. 2011). But *Valenzuela-Espinoza* is distinguishable. First, the delay from when the illegal materials were found to when the confession occurred was far longer in *Valenzuela-Espinoza* than here—in *Valenzuela-Espinoza*, the defendant was arrested at 11:15 am, and did not confess until sometime after 7:30 p.m. By contrast, Boche-Perez had only a four-hour delay between the discovery of the incriminating materials and the confession, and indeed, Boche-Perez confessed within one hour of actually being arrested. Second, *Valenzuela-Espinoza* indicated that delays in presentment were justifiable when caused by "the unavailability of government personnel . . . necessary to completing the arraignment process." *Id.* at 752. The U.S. Attorney is undoubtedly a person necessary to completing the arraignment process, and the record here indicates that presentment was delayed beyond Boche-Perez's 4:15 p.m. confession largely because the U.S. Attorney's office was unavailable to review any complaint that was drafted on such a tight turnaround. Third, the context for the delays is different—*Valenzuela-Espinoza* dealt with a morning discovery of illicit materials and a morning arrest in metropolitan Tucson. Moreover, numerous agents were present at the time of arrest, eight of whom the court determined were "available to complete Valenzuela-Espinoza's" arraignment. *Id.* at 752. By contrast, Boche-Perez's delay occurred at one of the busiest ports of entry in the country, and there has been no showing that there were surplus personnel available to review the criminal complaint, process Boche-Perez for immigration purposes, and transport him to the magistrate before 4:15 p.m. If anything, the

record shows just the opposite, and it is Boche-Perez's burden to substantiate a *McNabb-Mallory* violation.

In light of the totality of the circumstances, and especially given the added complications for law enforcement procedures created by the need for immigration processing at ports of entry, this case is far closer to *Garcia-Hernandez*, 569 F.3d at 1106, than to *Valenzuela-Espinonza.* Accordingly, we reject Boche-Perez's suggestion that somehow Ninth Circuit jurisprudence compels the suppression of Boche-Perez's confession, and we further decline to issue an advisory opinion concerning the outer-bounds of the *McNabb-Mallory* doctrine as applied by our circuit and the Ninth Circuit.

The totality of the circumstances, when considered under the *McNabb-Mallory* cases, indicates that the Government's delay in not presenting Boche-Perez by approximately 4:15 p.m. was reasonable. Because Boche-Perez's 4:15 p.m. confession happened during a period of reasonable delay, the district court properly denied the motion to suppress notwithstanding the lengthy delay before he was presented. Even if we assume *arguendo* that the delay became unreasonable at some point before Boche-Perez was presented to the magistrate, any subsequent illegality "does not retroactively change the circumstances under which" Boche-Perez confessed. *Mitchell*, 322 U.S. at 70.

(ii) The 6:00 p.m. Written Confession

Boche-Perez's second confession occurred at around 6:00 p.m. After Boche-Perez's oral confession at approximately 4:15, the CBP officer began the preparation of a written confession. The CBP officer took from approximately 4:20 p.m.-5:10 p.m. to prepare the statement. Boche-Perez then reviewed the statement, and signed the written confession at 6:00 p.m.

That delay was also reasonable. Reasonable delays for transferring an oral confession into writing do not trigger a *McNabb-Mallory* violation. *See, e.g.*, *Davis,* 532 F.2d at 25-26; *Candella*, 469 F.2d at 175-76; *Johnson*, 467 F.2d at

636; *Long*, 360 F.2d at 832-33; *Vita*, 294 F.2d at 532; *Haines*, 188 F.2d at 554-55; *Delamarra*, 275 F. Supp. at 4-5. As the D.C. Circuit observed in *Metoyer v. United States*:

> [T]he real thrust of the objection goes to the very rendering of the confession to written form. This is an attack upon a fundamental concept of the law that has always favored and encouraged the writing of freely expressed declarations which are known to be of crucial importance in order to minimize litigation and disputes as to just what was said. Delay does not mean mere passage of time; it means passage of time during which that which should and could be done is not done.

250 F.2d at 33. Moreover, even if the delay for translating Boche-Perez's oral confession into a written confession was unreasonable under *McNabb-Mallory,* any error was harmless. Boche-Perez's 6:00 p.m. written "confession overlapped in material respects" with his 4:15 p.m. oral confession and as such, any error is necessarily harmless. *United States v. Mansoori*, 304 F.3d 635, 662 (7th Cir. 2002); *see also Carter*, 484 F. App'x at 457-58; *United States v. Ragland*, 434 F. App'x 863, 869 (11th Cir. 2011).

(iii) The 9:00 p.m. Oral Confession

Boche-Perez's final confession occurred at 9 p.m. when he confessed to the ICE agent that he possessed additional illegal pornography at his home in Arkansas. We decline to address Boche-Perez's arguments because the record is hazy and even if we were to determine that the confession should have been excluded under *McNabb-Mallory,* any error would be necessarily harmless (under any standard of review) with respect to the offense to which Boche-Perez pleaded guilty. He had already twice confessed to that crime, and his earlier confessions were admissible under the *McNabb-Mallory* doctrine. Though Boche-Perez did confess to additional criminal activity in his 9:00 p.m. interview, he cannot show any prejudice in this particular case from the district court's refusal to suppress the confession because (1) he did not plead guilty to any of those additional offenses, and (2) the district court declined to consider the

additional evidence that the government seized following the third confession at Boche–Perez's home in Arkansas with respect to sentencing. As such, we do not consider his allegation of error.

**2)** *Voluntariness*

Boche-Perez also challenges the voluntariness of his three confessions. To determine whether a confession is voluntary we consider the totality of the circumstances pursuant to 18 U.S.C. § 3501(b). *Cantu-Ramirez*, 669 F.3d at 625-26. The factors used in this assessment are the length of time between arrest and before arraignment, whether the defendant was aware of the potential charges against him when he gave his statement, whether he was apprised of his rights, whether he had counsel, whether the delay was for purposes of interrogation, and whether the interview was "hostile." *Id.* at 625-27; *see also Bustamante-Saenz*, 894 F.2d at 120.

The totality of the circumstances shows that Boche-Perez's statements were voluntary even though he was not presented to a magistrate judge until two days after his detainment. *See Cantu-Ramirez*, 669 F.3d at 625-27. In particular, prior to his confession, he was aware of the charges against him and validly waived his rights, and nothing in the record indicates that "the delay was for the purpose of obtaining a confession." *Id.* at 626. Moreover, the 4:00 p.m. interview, during which Boche-Perez first confessed, lasted approximately one hour. The room in which the interrogation took place was large with officers walking in and out, and several other individuals were also being detained there. While Boche-Perez suggests that there was no evidence that he was given water or bathroom breaks, he does not affirmatively state that he was not given adequate water or breaks, and the testimony of the agents who interviewed him indicated that he did receive both water and breaks to visit the restroom. After waiving his rights immediately before the interview, Boche-Perez admitted that

he knew the DVDs in his luggage contained child pornography and then signed a written statement to that effect.  Although Boche-Perez was handcuffed during the interview, there is no evidence that his interviewer or any other agent threatened Boche-Perez or promised him anything.  *See United States v. Cardenas*, 410 F.3d 287, 295 (5th Cir. 2005) ("Such basic police procedures as restraining a suspect with handcuffs have never been held to constitute sufficient coercion to warrant suppression.").  As such, the district court did not err in concluding that the delay did not result "in an interrogation that was so 'lengthy, hostile, or coercive,' that it would tend to overwhelm [Boche-Perez's] will" and result in an involuntary confession. *Cantu–Ramirez*, 669 F.3d at 627.

### 3) *Miranda*

Finally, Boche-Perez tries to suppress his 9 p.m. confession on the grounds that he was not read his *Miranda* rights directly prior to the interview. This argument is without merit.  By 9 p.m. Boche-Perez had already waived his rights twice, and he has not challenged the voluntariness of his waivers.  Additional warnings were not required.  *See Soffar v. Cockrell*, 300 F.3d 588, 592-93 (5th Cir. 2002) (en banc).

### CONCLUSION

We AFFIRM the district court.

No. 12-40141

JAMES L. DENNIS, Circuit Judge, concurring:

Carmen Boche–Perez moved to suppress the confessions he made to arresting officers while in custody on the ground that they were involuntary and that the government's two-day delay in presenting him to a magistrate judge required suppression under the *McNabb–Mallory* exclusionary rule. *See* 18 U.S.C. § 3501(c); FED. R. CRIM. P. 5(a)(l)(A); *Corley v. United States*, 556 U.S. 303 (2010); *Mallory v. United States*, 354 U.S. 449 (1957); *McNabb v. United States*, 318 U.S. 322 (1943). I agree with the majority's conclusions that the confessions were voluntary and that Boche–Perez's first two confessions need not be suppressed because the government's delay in obtaining those confessions was reasonable under the circumstances and not calculated to extract a confession, and that the admission of his third confession, which occurred at 9:00 p.m. on the evening he was arrested, was at most harmless error. I write separately to emphasize two points. First, it is only under the unusual circumstances of this case that Boche–Perez's 9:00 p.m. confession is harmless error. Second, while I do not approve of the government's extended delay in presenting Boche–Perez to a magistrate judge after he made incriminating statements to investigators, the Supreme Court has held that an otherwise admissible confession obtained during a period of lawful detention is not subject to suppression merely because of the government's subsequent failure promptly to take the confessing defendant before a magistrate. *United States v. Mitchell*, 322 U.S. 65, 70-71 (1944). Accordingly, I concur in the majority's opinion affirming the denial of Boche–Perez's motion to suppress all three of his confessions.

## I.

First, there is a strong argument that Boche–Perez's third confession was made during a period of unnecessary delay under *McNabb–Mallory* and *Corley*. After Boche–Perez first confessed, he was forced to wait nearly six more hours before he was booked into the Webb County jail at 11:40 p.m. that night. Much

23

of that delay is due to the fact that the government inexplicably waited three hours before interviewing Boche–Perez again at approximately 9:00 p.m. The government offered no justification for this delay, and Agent Silva's testimony suggests that he reinterviewed Boche–Perez at 9:00 p.m. to get more information that would enable him to obtain a search warrant of Boche–Perez's home in Arkansas. *Cf. Mallory*, 354 U.S. at 455 ("[T]he delay must not be of a nature to give opportunity for the extraction of a confession."); *United States v. Liera*, 585 F.3d 1237, 1243 (9th Cir. 2009) (holding delay to obtain a second confession, which, unlike the first confession, could be audio-recorded, was unreasonable because "[a]n audio recording of Liera's statements was . . . unnecessary to complete the arraignment process or determine whether to file criminal charges").

However, due to the unusual circumstances of this case, I agree that the district court's failure to grant Boche–Perez's motion to suppress his 9:00 p.m. confession was harmless error. *Cf., e.g.*, *Arizona v. Fulminante*, 499 U.S. 279 (1991) (holding that harmless-error analysis applies to admissibility of coerced confessions); *Premo v. Moore*, 131 S. Ct. 733, 745 (2011) (discussing, through lens of § 2254 and *Strickland*, application of *Fulminante*'s harmless-error rule to cases involving plea bargains when the defendant might have moved to suppress his confession but failed to do so). Boche–Perez never asked this court or the district court to differentiate between the content of the 9:00 p.m. confession and the earlier confessions. Indeed, the 9:00 p.m. confession largely duplicated and corroborated the incriminating content of Boche–Perez's earlier confessions, and even without considering the 9:00 p.m. confession, there was ample evidence against Boche–Perez both in the form of the DVDs agents discovered in Boche–Perez's luggage and his earlier confessions. The 9:00 p.m. confession also did not affect Boche–Perez's sentence because the district court declined to consider the additional evidence that the government seized following the third

confession at Boche–Perez's home in Arkansas. Additionally, the government gave no indication that its prosecution depended on the admission of Boche–Perez's 9:00 p.m. confession—or any confession at all—because the U.S. Attorney's office indicated its willingness to proceed with prosecution before Boche–Perez confessed, and Boche–Perez does not now deny that he knew that the DVDs contained child pornography. *Cf. Premo*, 131 S. Ct. at 745 (explaining, in § 2254 case, that "even on direct review," the erroneous admission of the defendant's confession likely would have been harmless error because "evidence against [the defendant] was strong[;] [t]he accounts of [his] [two] confession[s] . . . corroborated each other[;] [t]he State gave no indication that its . . . prosecution depended on the admission of the police confession[;] and [the defendant] does not now deny" that he committed the offense to which he pleaded guilty). Therefore, I agree with the majority that the denial of Boche–Perez's motion to suppress his 9:00 p.m. confession was at most harmless error.

## II.

As I stated at the outset, I also agree with the majority's conclusion that the delay in presentment following Boche–Perez's confessions does not warrant the suppression of his confessions. That delay—because it occurred *after* Boche–Perez confessed—does not require the suppression of his confessions. *See Mitchell*, 322 U.S. at 70-71; *Corley*, 556 U.S. at 306 ("[A]n arrested person's confession is inadmissible if given *after* an unreasonable delay in bringing him before a judge.") (emphasis added). However, I am not unsympathetic to Boche–Perez's complaint that he was forced to spend two nights in jail before being presented to a magistrate. The government offers no explanation for this delay other than its compliance with the U.S. Attorney's office policy that requires arresting officers to submit the paperwork for a defendant's initial

appearance by 4:00 p.m. on the day before the defendant is presented to a magistrate judge.

After arresting Boche–Perez and obtaining both written and oral confessions and securing his prosecution by the U.S. Attorney's office, the government delayed presenting Boche–Perez to a magistrate judge for two days after the government agreed to prosecute him. The U.S. Attorney's office agreed to prosecute Boche–Perez at 3:22 p.m. on Wednesday, October 27, 2010, and agents booked him into the county jail that same evening. The federal building was within a ten-to-fifteen minute drive from where Boche–Perez was arrested, and agents confirmed that they had everything they needed to proceed with a prosecution. The record does not reflect that the delay was due to a shortage of government personnel or judges necessary to complete the arraignment process. Nevertheless, Boche–Perez was forced to spend two nights in county jail before he was presented to the magistrate judge on the morning of Friday, October 29, 2010. Under the circumstances, the arresting officers did not take Boche–Perez "without unnecessary delay before a magistrate judge," FED. R. CRIM. P. 5(a)(l)(A), thereby violating the requirement that an arresting officer take an arrestee before a magistrate "as soon as he reasonably c[an]," *Corley*, 556 U.S. at 306.

While, as noted above, the government's extended delay in presenting Boche–Perez to a magistrate judge does not require the suppression of Boche–Perez's confessions, *see, e.g.*, *Mitchell*, 322 U.S. at 70-71, the government's conduct in this case flouted the letter and purpose of Rule 5(a) and the prompt-presentment requirement. "[R]equiring that the police must with reasonable promptness show legal cause for detaining arrested persons . . . constitutes an important safeguard—not only in assuring protection for the innocent but also in securing conviction of the guilty by methods that commend themselves to a progressive and self-confident society. . . .   [It] checks resort to those

reprehensible practices known as the 'third degree' which, though universally rejected as indefensible, still find their way into use. It aims to avoid all the evil implications of secret interrogation of persons accused of crime." *Mallory*, 354 U.S. at 452-53 (quoting *McNabb*, 318 U.S. at 343-44) (quotation marks and alteration omitted). Indeed, the Fourth Amendment requires that a defendant receive a judicial determination of probable cause promptly after arrest or detention. *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975); *see Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56-59 (1991) (holding that Riverside County's failure to provide prompt judicial determinations of probable cause was susceptible to a Fourth Amendment challenge brought pursuant to 42 U.S.C. § 1983).

I do not think that the government's extended delay in presenting Boche–Perez to a magistrate judge after he confessed can be justified solely by the 4:00 p.m. deadline imposed by the U.S. Attorney's office. As the Supreme Court elucidated in *McLaughlin*, for Fourth Amendment purposes, simple administrative rules or practices are unlikely to justify a lengthy delay in presentment. *See* 500 U.S. at 57, 58 (suggesting that while "practical realities" outside of arresting officers' control might render a delay reasonable, at least for Fourth Amendment purposes, simple administrative rules or practices—there, Riverside County's policy of offering combined probable-cause determinations and arraignments within two days of arrest, exclusive of Saturdays, Sundays, or holidays—are unlikely to justify a lengthy delay).[1] Applying similar reasoning, in *United States v. Valenzuela–Espinoza*, 697 F.3d 742 (9th Cir.

---

[1] While *McLaughlin* addressed government officials' obligations under the Fourth Amendment, *McLaughlin* provides apt guidance because it considered a factual scenario very similar to the one presented in our case and applied a standard quite similar to the prompt-presentment requirement set forth in *Corley* and Federal Rule of Criminal Procedure 5, namely, that the government must offer probable-cause proceedings "as soon as is reasonably feasible." *McLaughlin*, 500 U.S. at 57; *cf.* FED. R. CRIM. P. 5(a)(l)(A); *Corley*, 556 U.S. at 306 (explaining that the prompt-presentment rule requires that an arresting officer must bring an arrestee before a magistrate "as soon as he reasonably c[an]" (emphasis added)).

No. 12-40141

2011), the court held that delay in presentment due to a court policy requiring paperwork for an initial appearance to be submitted by 10:30 a.m. on the intended day of the hearing—a policy nearly identical to the one here—was unreasonable and unnecessary under Rule 5(a) and *Corley–McNabb–Mallory*.[2]

That is not to say that all delay caused by administrative rules will necessarily be unreasonable. I share the majority's appreciation for the need for some administrative deadlines to streamline busy dockets. For example, "courts have found it permissible for the police to wait for regular business hours to bring the suspect to court." CHARLES ALAN WRIGHT & ANDREW D. LEIPOLD, 1 FEDERAL PRACTICE & PROCEDURE § 73, at 185 & n.21 (4th ed. 2008); *see, e.g.*, *United States v. Redlightning*, 624 F.3d 1090, 1109 (9th Cir. 2010) ("[N]o magistrate judge was reasonably available until 2:30 p.m. on October 3, when the next arraignment calendar commenced, so the delay until 2:30 p.m. on October 3 was reasonable."). Here, though, Boche–Perez was not brought promptly to a magistrate at the next arraignment calendar, on the Thursday after he was arrested; instead, he was forced to remain in jail until Friday morning. *See United States v. Wilson*, 838 F.2d 1081, 1085 (9th Cir. 1988) ("Even assuming that the delay overnight was reasonable, there is no reasonable excuse why Wilson was not promptly arraigned at the beginning of the arraignment calendar the next day." (footnote omitted)); *Valenzuela–Espinoza*, 697 F.3d at 751 ("An internal policy agreed upon by prosecutors and magistrate judges cannot trump the requirements of a federal statute and the Federal Rules of Criminal Procedure. . . . It is not the longstanding principle embodied in *McNabb–Mallory* that must give way to local paperwork needs, but the local paperwork policy that must be tailored to the requirements of *McNabb–Mallory*,

---

[2] In *Valenzuela–Espinoza*, unlike in the present case, the defendant confessed during this period of unnecessary delay—not before it—therefore requiring the suppression of his confession.

28

its implementing statute, and rule." (internal quotation marks and citations omitted)).  To my mind, the extended delay that occurred in Boche–Perez's case casts significant doubt upon whether the 4:00 p.m. policy is tailored to the requirements of *McNabb–Mallory*.  Such administrative rules should not routinely cause extended delays in presentment merely because they are convenient: convenience is not necessity.

As I have said, I agree with the majority that the two-day delay in presenting Boche–Perez to a magistrate does not require the suppression of his self-incriminating statements to investigators in this case.  *See Mitchell*, 322 U.S. at 70.  That is not to say, however, that the delay in presenting Boche–Perez to a magistrate was reasonable or necessary. "Such delay . . . is not acceptable as standard operating procedure; far from it."  *United States v. Perez–Bustamante*, 963 F.2d 48, 54 (5th Cir. 1992); *see Miranda v. Arizona*, 384 U.S. 436, 463 n.32 (1966) (stating, with respect to the *McNabb–Mallory* rule, that the Court's "decision today does not indicate in any manner, of course, that these rules can be disregarded.  When federal officials arrest an individual, they must as always comply with the dictates of the congressional legislation and cases thereunder.").

In conclusion, I concur but write separately to amplify the majority's admonition, *ante* at n.7, that a government agency's internal timetables cannot *ipso facto* justify extended delays in presentment.