# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
February 2, 2026

Lyle W. Cayce
Clerk

No. 25-10176
Summary Calendar

_____

United States of America,

*Plaintiff—Appellee*,

*versus*

Marco Antonio Alarcon Moreno,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:21-CR-252-4

_____

Before Stewart, Graves, and Oldham, *Circuit Judges*.

Per Curiam:[*]

Marco Antonio Alarcon Moreno was convicted of possession with the intent to distribute 50 grams or more of methamphetamine and was sentenced to 245 months of imprisonment. He appeals from this judgment, challenging the district court's denial of his motion to suppress evidence obtained in the initial warrantless entry and initial search of the property

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

surrounding a home that he maintained.  He contends that the evidence was insufficient to support the district court's finding of exigent circumstances and that reversal is independently warranted because the district court relied on evidence that was not before it or did not exist.  To the extent that Moreno challenges the validity of the warrant authorizing the subsequent search thereof, we do not consider the challenge because it was not raised in Moreno's opening brief.  *See United States v. Whitfield*, 590 F.3d 325, 370 (5th Cir. 2009) (issues not raised in opening brief are forfeited); *Beasley v. McCotter*, 798 F.2d 116, 118 (5th Cir. 1986) (counseled briefs are not entitled to liberal construction).

"When reviewing a denial of a motion to suppress evidence, we review factual findings for clear error and the ultimate constitutionality of law enforcement action de novo."  *United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010).  We view the evidence in the light most favorable to the prevailing party and must defer to the district court's factual findings unless there is "a definite and firm conviction that a mistake has been committed." *Id*.  "Where a district court's denial of a suppression motion is based on live oral testimony, the clearly erroneous standard is particularly strong because the judge had the opportunity to observe the demeanor of the witnesses." *United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005) (internal quotation marks and citation omitted).  As such, a district court's ruling on a motion to suppress "should be upheld if there is any reasonable view of the evidence to support it." *Scroggins*, 599 F.3d at 440 (internal quotation marks and citation omitted).  In addition, we may affirm the district court's ruling on any basis supported by the record. *United States v. Boche-Perez*, 755 F.3d 327, 333 (5th Cir. 2014).

The district court found that exigent circumstances existed for the following reasons.  The agents knew that the individuals in the Nissan watched by task force officers had transferred $220,000 worth of

methamphetamine to a pickup stopped on its way to Tulsa; the residence was "heavily protected by substantial security measures like completely obstructed windows, surveillance cameras, and caged off porches and doors"; the Nissan and two trucks would park only in the rear of the residence where they could not be seen; individuals entering the residence would don masks only after they went inside; the propane tanks found in the Nissan were of a type used in methamphetamine conversion; one of the occupants in the Nissan appeared to use his cell phone upon being stopped; shortly after the stop, Moreno and a codefendant arrived at the residence and quickly began entering and leaving the residence; after 30 minutes, Moreno exited the residence with a gray bin held high on his chest and such bins were commonly used in methamphetamine laboratories; and removal of the bin suggested that Moreno and his codefendant were destroying evidence.

Moreno fails to demonstrate that the district court's factual findings are clearly erroneous given the testimony that was provided by the officers at the suppression hearing, who had decades of experience investigating drug trafficking crimes and whom the district court deemed credible. Furthermore, given the task force officers' extensive experience in drug trafficking investigations, they harbored a reasonable belief that methamphetamine and evidence of conversion was being destroyed or removed from the residence and Moreno and his codefendant likely knew that the police were aware of their activities at the residence and might show up there. In addition, testimony at the suppression hearing established that liquid methamphetamine could easily be poured down the drain or on the lawn and crystal methamphetamine could be flushed down the toilet and that it would have taken a couple of hours to obtain a warrant.

These circumstances reasonably support the district court's determination that the entry and initial search of the property surrounding the home was supported by exigent circumstances as they establish the

presence of contraband; the easy removal and destruction of such contraband; urgency and the extended time necessary to secure a warrant; and Moreno's knowledge that the police were on his trail. *See United States v. Menchaca-Castruita*, 587 F.3d 283, 289-90 (5th Cir. 2009) (setting forth a non-exhaustive five factor test for ascertaining the existence of exigent circumstances); *see*, *e.g.*, *United States v. Turner*, 125 F.4th 693, 704 (5th Cir. 2025) (applying factors to circumstances presented). Although Moreno identifies several types of evidence that are often found in drug trafficking cases, including the use of confidential informants and controlled buys, he fails to explain why such evidence would be relevant in the instant case or support his argument with any authority stating such evidence would be required.

Moreno's argument that the district court erred in considering evidence that was not before it or did not exist is meritless. Construing the officers' credible testimony in the light most favorable to the Government, members of the task force surveilled the residence on multiple occasions over the course of a week. During that surveillance, they did not observe any persons or vehicles in the front yard but did observe the Nissan and two trucks in the backyard. Based on their combined decades of experience investigating drug trafficking crimes, the members of the task force inferred that one of the persons in the Nissan Altima had contacted the persons who arrived at the residence 10 minutes after the traffic stop. Finally, the task force officers collectively concluded upon learning about the gray plastic bin, which was commonly associated with methamphetamine conversion and distribution, that the two individuals at entering and leaving the home might destroy any liquid methamphetamine by pouring it down the drain or on the yard and destroy any crystal methamphetamine by flushing it down the toilet.

Accordingly, the judgment of the district court is AFFIRMED.