# United States Court of Appeals
## For the First Circuit

No. 13-1793

UNITED STATES OF AMERICA,

Appellee,

v.

MIKE GRACIANI-FEBUS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José A. Fusté, U.S. District Judge]

Before

Thompson, Lipez, and Barron,
Circuit Judges.

Irma R. Valldejuli on brief for appellant.
Rosa Emilia Rodríguez-Velez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and John A. Matthews II, Assistant United States Attorney, on brief for appellee.

August 28, 2015

**LIPEZ, Circuit Judge**.  Appellant Mike Graciani-Febus was sentenced to 360 months imprisonment for his involvement in a racketeering drug enterprise that resulted in the murder of two innocent bystanders. On appeal, he argues that the court failed to avoid an unwarranted sentence disparity when it imposed a higher sentence on him in comparison to the sentences imposed on his co-defendants. He also argues his sentence should be vacated because the district court failed to adjust his sentence to reflect the six months he served for a state drug offense. Because we find that appellant's sentence was not unjustly disparate, and that the district court properly calculated appellant's sentence pursuant to U.S.S.G. § 5G1.3, we affirm.

**I.**

**A. Statement of Facts**[1]

Graciani-Febus was a member of a criminal organization in the metropolitan area of San Juan, Puerto Rico called La Organizacion de Narcotraficantes Unidos ("Organization of United Drug Traffickers"), known as "La ONU."  La ONU controlled all drug sales within several public housing projects and regularly engaged in violent acts to protect and expand its control over drug points. In his role within La ONU, appellant participated in a conspiracy

---

[1] Because appellant pled guilty pursuant to a plea agreement, the relevant facts are taken from the plea agreement, unchallenged portions of the presentence investigation report, and the change of plea and sentencing hearings. See United States v. Dávila-González, 595 F.3d 42, 45 (1st Cir. 2010).

to possess with intent to distribute large quantities of drugs. In furtherance of this conspiracy, appellant served as a seller and enforcer for La ONU, carrying weapons to protect drug points in the housing projects, and committing several shootings in furtherance of drug sales.

On July 7, 2010, appellant, along with other members of La ONU, participated in a shootout with a rival drug-trafficking organization from Jardines de Paraíso at the Trujillo Alta Expressway during which two bystanders, Blanca Nanette de los Santos Barbosa and Manuel Medina Rivera, were killed. Six-hundred rounds of ammunition were fired. The shots that killed the victims came from the area where appellant and other members of La ONU were shooting. Appellant admitted that he participated in the shootout in an attempt to maintain and expand his position within La ONU.

In June 2011, appellant was arrested by the Commonwealth of Puerto Rico and charged with possession with the intent to distribute controlled substances, in violation of Article 401 of the Puerto Rico Controlled Substances Act, P.R. Laws Ann. tit. 24, § 2401. He was sentenced to four years imprisonment.

**B. Procedural History**

Six months after his sentencing on the Commonwealth charge, appellant was charged with thirty-two co-defendants in a thirty-three count indictment brought by a grand jury in the

District of Puerto Rico.[2] Count One charged appellant with knowingly and intentionally conspiring to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO") in violation of 18 U.S.C. § 1962(d), by engaging in narcotics distribution and acts of violence, including murder and attempted murder. Appellant pled guilty to Count One pursuant to a plea agreement.

At his sentencing hearing, appellant argued that his prior state conviction for possession with intent to distribute controlled substances constituted relevant conduct for the charged conspiracy and that his sentence should be reduced to reflect the six months he already had served for that conviction. The district court rejected that argument, noting that the prior state offense was not the basis for increasing appellant's offense level. The district court imposed a sentence of 360 months imprisonment,[3] to run concurrently with appellant's state sentence. Judgment was entered on May 21, 2013. Appellant filed a timely notice of appeal.

## II.

### A. Sentence Disparity

Appellant argues that in sentencing him to 360 months, the district court imposed a sentence that was unjustifiably long in comparison to those imposed on his co-defendants, whom he argues

---

[2] Appellant was charged in seven of the 33 counts.

[3] Based on a total offense level of 40, and a Criminal History Category of II, the Guidelines sentencing range is 324 to 405 months.

were more culpable generally in the RICO drug enterprise and, in particular, with respect to the July 7 murders. He asserts that the district court failed to provide any explanation for the disparate sentencing.[4]

Appellate review of a sentence is a two-step process. United States v. Politano, 522 F.3d 69, 72 (1st Cir. 2008). We first decide if the district court made any procedural errors "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence - including an explanation for any deviation from the Guidelines range." Id. (alteration in original) (quoting Gall v. United States, 552 U.S. 38, 51 (2007)). Where the district court has committed no such error, we evaluate "the substantive reasonableness of the sentence actually imposed and review the sentence for abuse of discretion." Id.

In determining an appropriate sentence, a district court is directed by statute to consider various factors, including "the nature and circumstances of the offense and the history and characteristics of the defendant," "the kinds of sentences

---

[4] Appellant correctly asserts that the waiver of appeal clause contained in his plea agreement is inapplicable. Appellant waived his right to appeal if the court sentenced him within the 240- to 348-month range. Because he was sentenced to 360 months, the waiver of appeal provision does not apply.

available," "the kinds of sentence and the sentencing range established" by the Sentencing Guidelines, and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). While an appraisal of sentencing disparity "primarily targets disparities among defendants nationally," United States v. McDonough, 727 F.3d 143, 165 (1st Cir. 2013), district courts "have discretion, in appropriate cases, to align codefendants' sentences somewhat in order to reflect comparable degrees of culpability," Martin v. United States, 520 F.3d 87, 94 (1st Cir. 2008).

Where a defendant receives a sentence within the Guidelines range, the district court's explanation of the sentence need not "be precise to the point of pedantry," United States v. Turbides-Leonardo, 468 F.3d 34, 40 (1st Cir. 2006), and "brevity is not to be confused with inattention," id. at 42; see also Rita v. United States, 551 U.S. 338, 356 (2007) ("[W]hen a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation.").

Imposing a sentence within the Guidelines, the district court considered appellant's role in the murder of two innocent bystanders:

> THE COURT: I have discussed with you the particulars of the case here. I have discussed here what really motivates the sentence, the killing of two innocent victims, a single mother police officer, young woman with small kids who is reporting to work in Hato Rey West

-6-

> Precinct here in Hato Rey, leaving home early in the morning to make a miserable check, miserable salary as a police officer. And she gets caught in the middle of this firing between competing gangs in the middle of the expressway and gets murdered, killed instantly, along with another person in another car who happened to be a librarian. People who had no ax to grind in this thing. Completely innocent people. Completely innocent people.

Appellant argues that the district court abused its discretion when it sentenced two co-defendants to terms of imprisonment twelve months shorter than he received. Three co-defendants pled guilty pursuant to an identical plea agreement, each agreeing to a sentence recommendation between 240 and 348 months. Appellant contends he had a lesser role within La ONU and less criminal responsibility than two of those co-defendants, Luis Joel Rosario Santiago and Carlos O'Neill Serrano, because they participated in the murder of another individual, in addition to the murders of the two innocent bystanders, and the same level of culpability as the third co-defendant, Angel Garcia Velasquez, who received 348 months.[5]

The record demonstrates that the district court did in fact consider appellant's specific role in the context of the whole case and imposed the sentence accordingly:

---

[5] Santiago was sentenced to 348 months and Serrano was sentenced to 365 months.

THE COURT: You have to look - you have to look that this is a huge case. Certain individuals for this same type of conduct went to trial. They are going to be sentenced by me or by Judge Smith, probably me. I have sentenced others. And I have to look at the whole picture. And I have a good idea of where everybody fits in this. And I cannot in good judgment and conscience follow the recommendation. I am not going to impose a life term. I am not going to make a variance for life. I am not going to impose 404 months or 405 months, but I cannot do what you're asking me to do . . . . [Appellant] admits the participation. And he admits he did it to maintain and increase his position in the organization.

The court went on to state that "[a]ny human being, any human being, whether you have a fifth grade [level of education][6] or whatever you have, must have some sort of internal light that tells you that this is totally wrong. . . . Anybody who leaves 600 shells of spent ammunition of various calibers, including AK-47s, in the place, in the scene of a dual murder like this one, I think that demonstrates a complete disregard for human life, and a complete disregard for civility. . . . My assessment is he was one of those who participated in the brutal murder of two innocent human beings that had no reason to die . . . ."

Significantly, appellant's co-defendants were not similarly situated. Although they were also responsible for the killing of two innocents, his co-defendants all had a CHC of I.

---

[6] Appellant had a fifth-grade level of education.

Appellant had a CHC of II. The applicable Guidelines range for CHC II is 324 to 405 months. The applicable Guidelines range for CHC I is 292 to 365. We have previously held that a difference in criminal history is a reasonable basis upon which a sentencing court can impose differing sentences. See United States v. Pierre, 484 F.3d 75, 90 (1st Cir. 2007) (holding that appellant was not similarly situated to his co-defendants because, among other reasons, his "criminal history included incidents that distinguished him from his co-conspirators"); see also United States v. Saez, 444 F.3d 15, 18 (1st Cir. 2006) (holding that a sentencing disparity explained by material differences in various defendants' criminal histories was not "unwarranted" within the meaning of 18 U.S.C. § 3553(a)(6)). Furthermore, in imposing its sentence, the court noted that appellant had a CHC of II and stated, "I make reference to my comments on criminal history and on brushes with the law, because truly the Criminal History Category II is not representative of what this man's history has been in the context of encounters with the law."

That Luis Joel Rosario Santiago and Carlos O'Neill Serrano participated in the murder of a third individual, a rival gang member, is certainly reprehensible, but the court seemed more focused on the fact that the co-defendants shared responsibility for killing two innocent people. What differentiated appellant from the co-defendants was his higher CHC. That CHC affects sentencing

both in the starting point for choosing a reasonable sentence -- the Guidelines -- and in evaluating the § 3553(a) factors. See 18 U.S.C. § 3553(a)(1) (directing courts to consider the "circumstances of the offense and the history and characteristics of the defendant").

The sentencing transcript thus reveals that the district court evaluated appellant's particular role in the conspiracy and the murders, his prior criminal conduct, arrived at its within-the-Guidelines sentence in reliance on that evaluation, and provided an adequate explanation of its sentence. Accordingly, the sentence is both substantively and procedurally reasonable. See United States v. Carrasco-de-Jesús, 589 F.3d 22, 30 (1st Cir. 2009) (stating that "a sentencing court's ultimate responsibility is to articulate a plausible rationale and arrive at a sensible result"). There was no unwarranted disparity in the sentence imposed.

**B. Sentence Adjustment to Reflect Time Served for State Conviction**

Appellant contends that the district court committed a procedural error when it refused to apply U.S.S.G. § 5G1.3 and adjust his sentence to credit the six months he had already served for his state drug charge.

We review de novo appellant's argument that the district court erred when it declined to reduce his sentence by six months. See United States v. Serunjogi, 767 F.3d 132, 142 (1st Cir. 2014)

(stating that we review de novo the sentencing court's interpretation or application of the Guidelines).

The applicable version of Guidelines § 5G1.3(b) provides for an adjustment of an appellant's sentence if: "[1] a term of imprisonment resulted from another offense that is relevant conduct to the instant offense . . . and [2] that [other offense] was the basis for an increase in the offense level for the instant offense."[7] The record and the Sentencing Guidelines reveal that appellant's prior state conviction was not the basis for an increase in the offense level for the instant offense and, hence, the district court did not err in failing to credit his time served.

The guideline for an 18 U.S.C. § 1962(d) offense is found in U.S.S.G. § 2E1.1(a)(2), which states that offenses involving unlawful conduct relating to RICO have the base offense level applicable to the underlying racketeering activity. Because the underlying activity at issue here is possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1), the applicable guideline is U.S.S.G. § 2D1.1. The cross reference for this section provides that if a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111, U.S.S.G. § 2A1.1 (First Degree Murder) is

_____

[7] Appellant was sentenced in May 2013. The November 2012 version of the Guidelines therefore applies.

-11-

applicable. U.S.S.G. § 2D1.1(d)(1). Section 2A1.1 specifies a base offense level of 43. Appellant accepted responsibility for his involvement in the criminal activity, and he thus received a three level adjustment pursuant to U.S.S.G. §§ 3E1.1(a) and (b), giving him a total offense level of 40.

Appellant's offense level was thus based on his participation in the murders of Blanca Nanette de los Santos Barbosa and Manuel Medina Rivera. The district court was correct in finding U.S.S.G. § 5G1.3 inapplicable because appellant's prior state conviction for drug distribution had no impact on his offense level.

**III.**

In arriving at its 360-month sentence, the district court made an individualized assessment of appellant's role in the conspiracy and murders, imposed its sentence in reliance on that assessment, and provided an adequate explanation for its sentence. Furthermore, the district court did not err when it declined to adjust appellant's sentence to reflect the six months he had served for his state drug conviction. Accordingly, we affirm its judgment.

So ordered.