# United States Court of Appeals
## For the First Circuit

No. 16-2505

UNITED STATES OF AMERICA,

Appellee,

v.

GABRIEL GALINDO-SERRANO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Howard, Chief Judge,
Lipez and Barron, Circuit Judges.

Mauricio Hernandez Arroyo, for defendant-appellant.
B. Kathryn Debrason, Assistant United States Attorney, with
whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and
Mariana E. Bauzá-Almonte, Assistant United States Attorney, were
on brief, for appellee.

May 30, 2019

**BARRON**, <u>**Circuit Judge**</u>. Gabriel Galindo-Serrano ("Galindo") appeals his convictions for various federal carjacking and firearm offenses relating to two incidents of carjacking in June and July of 2014 as well as his 600-month prison sentence. We affirm the convictions and the sentence.

## I.

On July 24, 2014, a federal grand jury in the District of Puerto Rico indicted Galindo and co-defendant Jean Morales-Rivera ("Morales") for carjacking, in violation of 18 U.S.C. §§ 2119(1) and (2) ("Count One"), and use of a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) ("Count Two"). Those counts described an incident that allegedly occurred on June 16, 2014. During the incident, Galindo and Morales allegedly approached a man ("J.F.M.") and a woman ("M.R.N.") standing near a car and threatened them with a revolver unless they handed over their car keys. Galindo then allegedly drove away in their car.

The indictment also charged Galindo with separate counts of carjacking "resulting in serious bodily injury, that is: sexual assault," in violation of 18 U.S.C. § 2119(2) ("Count Three"), use of a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) ("Count Four"), and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) ("Count Five"). Those counts described an incident that allegedly occurred on July

- 2 -

8, 2014, in which Galindo allegedly pointed a gun at a woman ("N.A.M.") stopped at a traffic light, entered her car (which was registered to her mother) and took over the wheel. He then allegedly drove her to a basketball court, where he raped her and left her bleeding.

Galindo proceeded to trial on all five counts. Two days into the trial, he moved to suppress statements that he had made to Federal Bureau of Investigation ("FBI") agents following his arrest. In those statements, he confessed to both carjackings and to the sexual assault. The government objected that the motion to suppress was untimely. The District Court noted that the motion had "been filed belatedly," but decided to "have a [suppression] hearing anyway." The District Court denied the motion.

At trial, the government presented testimony from M.R.N. and N.A.M. In that testimony, they recounted the carjackings and positively identified Galindo as the perpetrator. The government also presented testimony from the operator who took M.R.N.'s 911 call, the individual who assisted N.A.M. after she had been abandoned on the basketball court, the doctor who treated N.A.M. at the hospital and performed her rape kit, and the DNA specialist who tested the rape kit and determined that the DNA samples from the rape kit matched Galindo's DNA.

In addition, the government presented testimony from police officers. They testified that they had heard Galindo's

confession following his arrest and observed Galindo driving N.A.M.'s mother's car while in possession of a firearm. The defense did not present any evidence. A jury convicted Galindo of all counts.

At the beginning of Galindo's sentencing hearing on July 6, 2016, defense counsel pointed out that Galindo had signs of self-inflicted injury and moved for a continuance so that a competency evaluation could be undertaken. The District Court, noting a lack of evidence of psychological problems in the record, responded that it would go forward with the sentencing that day but indicated that it would order a post-sentencing competency evaluation. Based on "the report from the evaluation," the District Court would "[re]consider the matter [of competency]" and might "resentence [Galindo] . . . or proceed accordingly, depending on the evaluation, what it says."

The District Court then sentenced Galindo to concurrent 120-month prison sentences for Counts One, Three, and Five to be served consecutive to a seven-year prison sentence for Count Two and a thirty-three-year prison sentence for Count Four. In total, the District Court sentenced Galindo to 600 months in prison.

After the District Court announced the sentence, defense counsel again objected that Galindo "may or may not be competent to understand what the proceedings have been here today." Defense

counsel did not, at that time, make any other objection to Galindo's sentence based on the state of his mental health.

On July 7, 2016, defense counsel filed a motion for "an extension of time within which to file the notice of appeal or an appeal until 15 days after the mental health report is filed by the [Bureau of Prisons]." The District Court granted the motion on July 27, 2016.

The competency evaluation was filed with the District Court on November 23, 2016. The evaluation concluded that Galindo did not present with a mental disease or defect that rendered him incompetent to be sentenced. Galindo then appealed his convictions and sentence on November 29, 2016.

On January 3, 2017, we issued an order to show cause why Galindo's appeal should not be dismissed as untimely. Federal Rule of Appellate Procedure 4(b) requires that a criminal "defendant's notice of appeal . . . be filed within 14 days of the entry of . . . the judgment . . . being appealed." Fed. R. App. P. 4(b)(1)(A)(i). "Although the [D]istrict Court may extend the time for filing a notice of appeal by up to 30 additional days upon a showing of excusable neglect or good cause [under Federal Rule of Appellate Procedure 4(b)(4)]," we explained, "the [D]istrict [C]ourt does not have authority" -- as it did here -- "to extend the time to appeal beyond that point [under Federal Rule of Appellate Procedure 26(b)(1)]."

On January 17, 2017, the government filed a response to our show-cause order in which it "request[ed] that the instant appeal be dismissed as untimely." On January 20, 2017, Galindo filed a response to our show-cause order and cross-moved for a stay of his appeal pending the resolution of a separate motion to vacate his sentence that he had filed with the District Court on January 19, 2017.

On June 29, 2017, the government moved to withdraw its motion to dismiss the appeal as untimely. On July 13, 2017, we granted the government's motion to withdraw its motion to dismiss and denied Galindo's motion to stay his appeal. We have "h[e]ld that Rule 4(b)'s time limits are not 'mandatory and jurisdictional' in the absence of a timely objection from the government." United States v. Reyes-Santiago, 804 F.3d 453, 458 (1st Cir. 2015) (quoting Fed. R. Crim. P. 37(a)(2)). Our jurisdiction to consider this appeal is therefore secure.

The separate January 19, 2017 motion to vacate Galindo's sentence was filed with the District Court on the understanding that "[t]he appeal st[ood] to be dismissed." In the motion, Galindo contended that, pursuant to 18 U.S.C. § 4241 (providing that a "court shall grant" a "motion for a hearing to determine the mental competency of the defendant" "if there is reasonable cause to believe that the defendant may presently be . . . mentally incompetent"), the July 6, 2016 judgment "should

- 6 -

not have been entered without the competency of the defendant being assured."[1]  Galindo did not otherwise object to his sentence.  On August 30, 2017, the District Court dismissed the motion "as moot" following our order allowing Galindo to go forward with his appeal.

## II.

We begin with Galindo's challenge to the District Court's denial of his motion to suppress his confession.  "In considering a challenge to a district court's denial of a motion to suppress, we review the court's legal conclusions de novo and its findings of fact for clear error."  United States v. Jacques, 744 F.3d 804, 809 (1st Cir. 2014) (citing United States v. Mejía, 600 F.3d 12, 17 (1st Cir. 2010)).

Galindo premises his motion to suppress on the fact that he made his confession after he had been held in custody for more than eighteen hours without first having been presented to a magistrate judge.  He contends that, contrary to the District Court's finding, this substantial delay in presenting him to a magistrate judge was neither reasonable nor necessary.  He thus contends that the District Court erred in denying his motion to suppress.

---

[1] Although Galindo points out on appeal that the District Court acted prematurely by imposing his sentence before it had received and reviewed the competency report, he does not make any developed argument to explain why his sentence should be vacated on this basis.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

Under Federal Rule of Criminal Procedure 5(a)(1), a defendant who has been "arrest[ed] within the United States" is entitled to be brought "without unnecessary delay before a magistrate judge." Fed. R. Crim. P. 5(a)(1)(A) (emphasis added). The Supreme Court has explained -- in a line of precedent that begins with McNabb v. United States, 318 U.S. 332 (1943), and Mallory v. United States, 354 U.S. 449 (1957) -- that this right to prompt presentment "avoids all the evil implications of secret interrogation of persons accused of crime," McNabb, 318 U.S. at 344, and ensures that the defendant "may be advised of his rights" "as quickly as possible" and that "the issue of probable cause may be promptly determined," Mallory, 354 U.S. at 454. To protect this right, "the rule known simply as McNabb-Mallory 'generally render[s] inadmissible confessions made during periods of detention that violat[e] the prompt presentment requirement of Rule 5(a).'" Corley v. United States, 556 U.S. 303, 309 (2009) (quoting United States v. Alvarez-Sanchez, 511 U.S. 350, 354 (1994)) (alteration in original).

There is, however, another provision of federal law that is relevant. "Following the Supreme Court's articulation of the McNabb-Mallory exclusionary rule, Congress enacted 18 U.S.C. § 3501 to create a safe harbor period for certain voluntary confessions [that are given within six hours of a defendant's

arrest]."[2]  Jacques, 744 F.3d at 813 (citing Corley, 555 U.S. at 309).

Notwithstanding the safe harbor that § 3501 establishes, the statute also provides that, if a confession is made more than six hours after a defendant's arrest and before his presentment to a magistrate judge, the "trial judge" is required to "find[]" that "the delay in bringing [the defendant] before [a] magistrate judge . . . is . . . reasonable" before admitting the confession. 18 U.S.C. § 3501(c).  The Supreme Court has interpreted "§ 3501 [to have] modified McNabb-Mallory without supplanting it." Corley, 556 U.S. at 322.  "Under the rule as revised by § 3501(c), . . . [i]f the confession came within [six hours of arrest], it is admissible, subject to the other Rules of Evidence, so long as it was 'made voluntarily and . . . the weight to be given [it] is left to the jury.'"  Id. (quoting 18 U.S.C. § 3501(c)).  "If the confession occurred before presentment and beyond six hours," as was the case here, "the court must decide whether delaying that long was unreasonable or unnecessary under the McNabb-Mallory cases, and if it was, the confession is to be suppressed."  Id.

---

[2] Specifically, if a "confession was made or given by [a] person within six hours immediately following his arrest or other detention," the confession "shall not be inadmissible solely because of [the] delay in bringing such person before a magistrate judge."  18 U.S.C. § 3501(c) (emphasis added).

- 9 -

There is one other provision of federal law that is relevant to Galindo's motion to suppress. Federal Rule of Criminal Procedure 12(b)(3)(C) provides that any "objections" concerning the "suppression of evidence" "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(C). Federal Rule of Criminal Procedure 12(c)(3), however, sets forth an exception to this requirement. The exception provides that "a court may consider [an untimely] objection . . . if the party shows good cause." Fed. R. Crim. P. 12(c)(3). "We have interpreted the good cause standard to require a showing of both cause (that is, a good reason for failing to file a motion on time) and prejudice (that is, some colorable prospect of cognizable harm resulting from a failure to allow the late filing)." United States v. Santana-Dones, 920 F.3d 70, 81 (1st Cir. 2019) (citing United States v. Arias, 848 F.3d 504, 513 (1st Cir. 2017); United States v. Santos Batista, 239 F.3d 16, 19 (1st Cir. 2001)).

Here, defense counsel moved to suppress Galindo's confession two days after his trial had already begun. Because the motion was untimely, the government argues that we should consider Galindo's motion waived under Federal Rule of Criminal Procedure 12(c)(3). See, e.g., United States v. Sweeney, 887 F.3d 529, 534 (1st Cir.), cert. denied, 139 S. Ct. 322 (2018); United

- 10 -

States v. Walker-Couvertier, 860 F.3d 1, 9 n.1 (1st Cir. 2017), cert. denied sub nom. Lugo-Diaz v. United States, 138 S. Ct. 1303 (2018), and cert. denied, 138 S. Ct. 1339 (2018); United States v. Casey, 825 F.3d 1, 21 (1st Cir. 2016).

When the District Court asked defense counsel why he had not "submit[ted] a motion to suppress before [trial]," he responded, "I don't know why I didn't.  I overlooked it[.]"  On appeal, Galindo offers no explanation for his failure to timely file the motion.[3]  Moreover, the government represented below -- and defense counsel did not deny -- that in August 2014 it had provided to defense counsel "the information regarding when his client was arrested, when he was taken into MDC, by whom, at what time, [and] what the FBI did on July 9th and July 10th."[4]  The

---

[3] Defense counsel states in his reply brief, without any further explanation, that "[t]here was a series of undue delay[s] in bringing this case for trial by the Government as the record clearly indicates that attributed to delays."

[4] Defense counsel did represent to the District Court that the government filed its designation of evidence expressing its intent to offer evidence of the "[d]efendant's statements" only eight days before the start of trial.  But, the government explained, "even though the government formally filed the designation in 2016, the truth is that in the discovery letter given to Brother Counsel in 2014, in the second page, the United States specifies that we are designating every item on that discovery letter under [Federal Rule of Criminal Procedure] 12(b)(4)(A)[,] [which] means we are designating all that discovery like we're going to use that discovery on trial."  Defense counsel did not respond to the government's explanation at the suppression hearing, nor does he raise that issue on appeal.

- 11 -

government argued that there thus was "no reason why, a year and a half later, the defense is filing this motion to suppress."

The District Court did not make any express finding as to whether Galindo had shown "good cause" for the untimeliness of the motion to suppress. The District Court stated only that it was "going to have a [suppression] hearing anyway" and went on to address the merits.

The fact that the District Court addressed the merits of the suppression motion does not cure the defendant's waiver. A District Court "may opt to address a waived claim simply to create a record in the event that the appellate court does not deem the argument waived." Walker-Couvertier, 860 F.3d at 9. Thus, "[e]ven when the [D]istrict [C]ourt rules on an untimely motion, as the [C]ourt did here, an untimely motion to suppress is deemed waived unless the party seeking to suppress can show good cause as to the delay," which defense counsel has not. Sweeney, 887 F.3d at 534.

We are nonetheless troubled by the District Court's explanation for why it found that the eighteen-hour delay in bringing Galindo before a magistrate judge "was not unreasonable" and "was necessary" for the FBI "to be able to complete . . . the booking [and] the other matters that the FBI was doing to obtain their case to be able to present it to the magistrate judge," which included "prepar[ation] [of the] search warrant." Thus,

- 12 -

notwithstanding the waiver, we explain the source of our concern in order to clarify the law in this area.

The District Court made its findings regarding the nature of the delay based on the following undisputed facts. Galindo was arrested by Puerto Rico Police Department officers "around 7:00 p.m., at a public housing project," on July 9, 2014. The Puerto Rico Police immediately turned over custody of Galindo to the FBI. Galindo was detained at the Metropolitan Detention Center ("MDC") Guaynabo overnight.

That night, FBI agents prepared and obtained a warrant from a magistrate judge to search Galindo's mother's residence. FBI agents executed the search warrant from 1:30 a.m. to 2:00 a.m. and then "recessed" for the night.

The next day, on July 10, 2014, FBI agents took Galindo to the federal building to "process[]" him around 11:00 a.m. The FBI agents then read Galindo his rights around 1:30 p.m. and began his interview around 1:58 p.m. During the interrogation, Galindo confessed to both carjackings and to sexually assaulting N.A.M. Shortly after the FBI questioning, Galindo was brought before a federal magistrate judge.

Delay "for the purpose of interrogation" "is the epitome of 'unnecessary delay.'" Corley, 556 U.S. at 308 (quoting Mallory, 354 U.S. at 455-56); see also Jacques, 744 F.3d at 815 n.4; United States v. Garcia-Hernandez, 569 F.3d 1100, 1106 (9th Cir. 2009).

The District Court found that Galindo "w[as] not subjected to any interviews by anyone" while he was "under custody at MDC Guaynabo" and was not interrogated until the following afternoon shortly before presentment.

But, under McNabb-Mallory, "unexplained delays, despite being in close proximity to an available judge can be considered unreasonable." United States v. Thompson, 772 F.3d 752, 761 (3d Cir. 2014) (citing United States v. Wilson, 838 F.2d 1081, 1085 (9th Cir. 1988)); see also United States v. Boche-Perez, 755 F.3d 327, 336 (5th Cir. 2014) ("A non-existent explanation (i.e., delay for delay's sake) is unacceptable under McNabb–Mallory because a delay for delay's sake is, by definition, unnecessary to any legitimate law enforcement purpose.").

Thus, notwithstanding the District Court's finding that Galindo was not interrogated until shortly before his presentment to a magistrate judge, the critical question remains: what explains the delay at issue?  The District Court found that the delay could be attributed to legitimate administrative concerns. See Jacques, 744 F.3d at 814 (noting that "a delay may be reasonable if caused by administrative concerns, such as the unavailability of a magistrate following an arrest, or by a shortage of personnel" (citations omitted)).  We doubt, though, that the administrative concerns that the District Court identified -- or any other

- 14 -

"legitimate law enforcement purpose," Boche-Perez, 755 F.3d at 336 -- made the delay in presentment reasonable or necessary here.

The undisputed record shows that "there were, approximately, seven to 10 people" "participating in th[e] investigation." See, e.g., United States v. Perez, 733 F.2d 1026, 1035 (2d Cir. 1984) (finding no "shortage of manpower" where "more than six agents were assigned to the case, and . . . one of them could have taken [the defendant] to the then available magistrate"). The District Court noted some agents may have been committed to assisting the Puerto Rico Police in containing the "real threat that a riot would take place" at the housing project where Galindo was arrested. But, no agent testified at the suppression hearing as to how many FBI agents were in fact involved in containing -- or needed to contain -- any impending riot or as to how long they were in fact there.

The District Court also noted that some FBI agents were occupied with "prepar[ing] a search warrant" for Galindo's mother's residence, which involved "prepar[ing] the Affidavit, the Complaint, talk[ing] to the Assistant U.S. Attorney on duty, and thereafter go[ing] to the magistrate judge who is on duty to request for the search warrant." The record again does not show how many agents were involved in that process. See United States v. Valenzuela-Espinoza, 697 F.3d 742, 752 (9th Cir. 2012) (noting that "the fact that one officer out of nine was fulfilling his

- 15 -

responsibility to obtain a search warrant did not make the delay reasonable under McNabb-Mallory").

Moreover, the fact that the FBI agents went to a magistrate judge within six hours of Galindo's arrest to obtain the search warrant raises a question as to "why [Galindo could] not [have] accompanied [the agents] to [the same magistrate] for arraignment at that time." Perez, 733 F.2d at 1036; cf. United States v. Wilson, 838 F.2d 1081, 1085 (9th Cir. 1988) (finding the delay unreasonable where "arraignments were being conducted one flight upstairs from the room where [the defendant] was being questioned, and the magistrate was open for business while [the defendant] was being questioned").

In any event, the search warrant and impending riot can at most explain the overnight delay in bringing Galindo before a magistrate judge. See Thompson, 772 F.3d at 762-63. There remains the question why -- as the undisputed record shows -- Galindo was not brought before a magistrate judge until after 2 p.m. the day after his arrest, especially given that the undisputed record shows that an available magistrate judge was only fifteen minutes away from where the defendant was detained.

The District Court noted that Galindo had to be taken to and "processed at the FBI office." But, "[t]he government presented no evidence as to . . . why [Galindo] had to be processed at the [FBI] prior to presentment." Id. at 763 (emphasis added).

- 16 -

Nonetheless, even if the confession should have been suppressed pursuant to McNabb-Mallory, we have no occasion to consider whether Galindo was prejudiced thereby because, as we have noted, his "suppression claim was waived -- and having waived it, [he] is not entitled to any appellate review."[5]  Walker-Couvertier, 860 F.3d at 9.  We therefore must affirm the District Court's denial of Galindo's suppression motion.  See United States v. George, 886 F.3d 31, 39 (1st Cir. 2018) ("We are at liberty to affirm a district court's judgment on any ground made manifest by the record . . . .").

## III.

Galindo next contends that his convictions and sentence must be vacated because the District Court erred in refusing to admit a Facebook photo of one of Galindo's friends.  Galindo concedes that his unpreserved evidentiary objection must be reviewed only for plain error.  See United States v. Reda, 787 F.3d 625, 628 (1st Cir. 2015).  Galindo thus must show that the District Court's exclusion of the Facebook photo was "(1) an error (2) that is clear and obvious, (3) affecting Galindo's substantial

---

[5] For the same reason, we must also reject Galindo's challenges -- raised for the first time on appeal -- to the admission of his confession based on his limited mental capacity and the government's failure to record the interrogation.

rights, and (4) seriously impairing the integrity of judicial proceedings." Id. We conclude that Galindo has failed to do so.

Galindo's only defense at trial to the July 2014 carjacking was that N.A.M. consented to letting Galindo into her car and to having sexual intercourse with him. In support of that defense, defense counsel asked N.A.M. during cross-examination whether, prior to the carjacking, she had met Galindo or Erick Joel Estrada Morales ("Estrada"), whom Galindo sought to show was a mutual acquaintance. N.A.M. denied knowing either Galindo or Estrada. Defense counsel then sought to ask N.A.M. whether she recognized Estrada in a Facebook photograph. The District Court refused to admit the photograph on the ground that it had not been properly authenticated. Six months after the trial, defense counsel made a proffer under Federal Rule of Evidence 103(a)(2) regarding the photo, which the District Court denied at sentencing as untimely.

Under Federal Rule of Evidence 901, "the proponent [of an item of evidence] must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Here, defense counsel had proposed to introduce the photograph at issue only by "turn[ing] the computer on and show[ing] [the photograph] to [the Court] on Facebook." Defense counsel did not -- during his initial offer or in his subsequent untimely proffer -- point to any evidence that was "extrinsic to

- 18 -

the document or item itself" or to "elements of the document itself," which would provide "enough support . . . to warrant a reasonable person in determining that the evidence is what it purports to be." United States v. Blanchard, 867 F.3d 1, 5-6 (1st Cir. 2017), cert. denied, 138 S. Ct. 2691 (2018) (citing Fed. R. Evid. 901(b)(1) & 901(b)(4)) (internal quotation marks omitted). Nor does Galindo contend that the photograph was self-authenticating. See Fed. R. Evid. 902.

Galindo does contend that the District Court's refusal to admit the photograph wrongly precluded him from "develop[ing] th[e] line of questioning" concerning whether N.A.M. knew Galindo or his friend, which was "crucial to the defense theory of consent." But, that contention fails because "[the defendant's] . . . right to present a complete defense . . . do[es] not create an auxiliary right to have all . . . evidentiary rulings turn in his favor." United States v. Gemma, 818 F.3d 23, 35 (1st Cir. 2016).

## IV.

We turn, then, to Galindo's challenge to his 600-month prison sentence, which he contends was procedurally and substantively unreasonable. We review a preserved claim of sentencing error for abuse of discretion. See United States v. Cortés-Medina, 819 F.3d 566, 569 (1st Cir. 2016). "[W]hen an objection is not preserved in the court below[,] . . . review is

for plain error." Id. (citing United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)).

## A.

Galindo contends that the District Court erred in failing to reconsider -- under 18 U.S.C. § 3553(a) -- Galindo's sentence in light of the information presented in the post-sentencing competency evaluation. But, Galindo did not raise this objection to his sentence below. We therefore review this challenge to the sentence only for plain error. See id. We find none.

Galindo points to no authority to support his assertion that a District Court must redo its § 3553(a) analysis sua sponte after having received the results of a post-sentencing competency evaluation. See United States v. Morosco, 822 F.3d 1, 21 (1st Cir. 2016) (explaining that "plain error" is "an 'indisputable' error by the judge, 'given controlling precedent'" (quoting United States v. Correa-Osorio, 784 F.3d 11, 22 (1st Cir. 2015))). Nor has Galindo shown that there is a "reasonable probability that, but for the error, the [D]istrict [C]ourt would have imposed a different, more favorable sentence." United States v. Mangual-Garcia, 505 F.3d 1, 15 (1st Cir. 2007) (internal quotation marks omitted).

The competency evaluation included more detailed medical information concerning Galindo's history of personality disorders,

ADHD, and various drug and alcohol abuse disorders. But, the District Court had already specifically noted at sentencing that Galindo had "abandoned school in seventh grade and has received no further educational or vocational training," "was classified under special education and diagnosed with attention deficit disorder with hyperactivity," "has a history of aggressive and impulsive behavior for which he has received treatment, but abandoned it at the age of 16," and "has a history of poly drug use since age 15." Galindo does not point to any specific mental health issue noted in the competency evaluation that had not been raised to the District Court by the PSR or the other materials that the District Court considered at sentencing. Cf. United States v. Alvarez-Cuevas, 210 F. App'x 23, 24 (1st Cir. 2007) (affirming the denial of a motion for a new PSR because the defendant had not "identified any new information not already considered by the sentencing judge which a new or revised PSR would have provided").

To the extent that Galindo means to argue that the District Court erred by not considering these mitigating features concerning his mental health at all in sentencing him, the record does not support that conclusion. In fact, the District Court explicitly stated that it "ha[d] considered the . . . sentencing factors as set forth in 18 U.S.C. § 3553(a)." See United States v. Santiago-Rivera, 744 F.3d 229, 233 (1st Cir. 2014) ("Such a statement is entitled to significant weight . . . ."); United

- 21 -

States v. Arroyo-Maldonado, 791 F.3d 193, 199 (1st Cir. 2015) (same).

The District Court did not expressly reference 18 U.S.C. § 3553(a)(2)(D) in its balancing of the § 3553(a) factors. But, "we do not require an express weighing of mitigating and aggravating factors or that each factor be individually mentioned." United States v. Lozada-Aponte, 689 F.3d 791, 793 (1st Cir. 2012) (citing United States v. Arango, 508 F.3d 34, 46 (1st Cir. 2007)).

Finally, to the extent that Galindo means to argue that the District Court erred in not assigning enough weight to his mental health history, he "face[s] an uphill battle." United States v. Caballero-Vázquez, 896 F.3d 115, 120 (1st Cir. 2018). "Decisions [that involve weighing the § 3553(a) factors] are within the sound discretion of sentencing courts, and we 'will not disturb a well-reasoned decision to give greater weight to particular sentencing factors over others.'" Id. (quoting United States v. Santini-Santiago, 846 F.3d 487, 492 (1st Cir. 2017)) (alteration in original).

Here, the record shows that the District Court found the aggravating factors -- specifically, Galindo's criminal history, "the violence inflicted upon the victims," and "the nature and circumstances of the offense" -- to be more compelling than the mitigating factors that it previously had noted. See id. at 121;

United States v. Martins, 413 F.3d 139, 154 (1st Cir. 2005). Thus, we conclude that "the sentencing transcript, read as a whole, evinces a sufficient weighing of the section 3553(a) factors." United States v. Dávila-González, 595 F.3d 42, 49 (1st Cir. 2010).

**B.**

Galindo separately contends that the sentence imposed was unreasonable because the District Court failed to account for "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Galindo did not make this particular objection below, despite the fact that his co-defendant had been sentenced a full year before him. We therefore review for plain error. See Cortés-Medina, 819 F.3d at 569.

"We have said that § 3553(a)(6) is primarily concerned with national disparities," but we will also "examine[] arguments . . . that a sentence was substantively unreasonable because of the disparity with the sentence given to a co-defendant." United States v. Reverol-Rivera, 778 F.3d 363, 366 (1st Cir. 2015) (citing Dávila-González, 595 F.3d at 49; United States v. Mateo-Espejo, 426 F.3d 508, 514 (1st Cir. 2005)). Here, Galindo argues that the District Court erred in giving him a 204-month prison sentence for Counts One, Two, Three, and Five because his co-defendant Morales received only a 93-month prison sentence for Counts One and Two.

We "have routinely rejected disparity claims" where "complaining defendants . . . fail to acknowledge material differences between their own circumstances and those of their more leniently punished confederates." Reyes-Santiago, 804 F.3d at 467; see also United States v. Rivera-Gonzalez, 626 F.3d 639, 648 (1st Cir. 2010). Here, "only [Galindo] went to trial, while [Morales] . . . pleaded guilty," United States v. Bedini, 861 F.3d 10, 21-22 (1st Cir. 2017); see also United States v. Mena-Robles, 4 F.3d 1026, 1035 n.9 (1st Cir. 1993), Galindo had a higher Criminal History Category than Morales, see United States v. Graciani-Febus, 800 F.3d 48, 52 (1st Cir. 2015) (citing United States v. Pierre, 484 F.3d 75, 90 (1st Cir. 2007)); United States v. Saez, 444 F.3d 15, 18 (1st Cir. 2006), and Galindo was sentenced for more serious offense conduct than Morales,[6] see Mena-Robles, 4 F.3d at 1035 n.9; United States v. Butt, 955 F.2d 77, 90 (1st Cir. 1992). Yet, Galindo does not adequately account for these "material differences" in pressing his challenge. Reyes-Santiago, 804 F.3d at 467.

---

[6] Morales's sentence encompassed only his participation in the first carjacking and the lesser included offense of carrying and using a firearm in relation to a crime of violence. In contrast, Galindo's sentence encompassed the more serious offense of brandishing a firearm in relation to a crime of violence as well as his participation in both the first and second carjackings, the resulting bodily harm inflicted by him in sexually assaulting N.A.M., and the felon-in-possession offense.

## V.

For the foregoing reasons, we <u>affirm</u> Galindo's convictions and sentence.